UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

       Defendants.

_____/

GOVERNMENT'S RESPONSE TO DEFENDANT WALTINE NAUTA'S
MOTION TO DISMISS THE INDICTMENT

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

DISCUSSION ........................................................................................................................... 7

I.     Applicable Legal Standards Under the Federal Rules of Criminal Procedure .................. 7

II.    The Superseding Indictment Is More Than Sufficient ...................................................... 9

III.   The Superseding Indictment Is Not Duplicitous ............................................................ 10

       A.     Legal Standards ..................................................................................................... 11

       B.     Count 33 Is Not Duplicitous .................................................................................. 13

       C.     The Obstruction of Justice and Concealment Counts Are Not Duplicitous .............. 18

IV.    Count 39 Properly Alleges False Statements ................................................................. 19

V.     Surplusage ...................................................................................................................... 21

CONCLUSION ....................................................................................................................... 22

Defendant Waltine Nauta moves the Court to dismiss all counts of the Superseding Indictment in which he is charged. ECF No. 352.[1] Nauta offers a variety of challenges to the charges, but they are all without merit. The Superseding Indictment contains a detailed, clear, and thorough recitation of the factual allegations, carefully tracks the applicable statutory language, and fully apprises Nauta of the crimes with which he is charged. It makes abundantly clear what crimes he is charged with committing; how, when, and where he committed them; and with whom. The Superseding Indictment is more than sufficient under well-established Eleventh Circuit law, and nothing more is required at this stage of the proceedings. His motion should be denied in its entirety without a hearing.

## BACKGROUND

On July 27, 2023, a grand jury in this district returned the Superseding Indictment against Nauta and co-defendants Donald J. Trump and Carlos De Oliveira. ECF No. 85. In sum, Nauta is charged along with Trump and De Oliveira with obstructing and conspiring to obstruct an active grand jury investigation that focused on the location of boxes containing classified records at the Mar-a-Lago Club ("Mar-a-Lago"). He is also charged with lying to FBI agents in a voluntary, recorded interview about his knowledge of the location and storage of those boxes at Mar-a-Lago. The Superseding Indictment includes a lengthy and detailed factual recitation that makes clear exactly what Nauta did, what his role was in the conspiracy, and what crimes he is charged with committing.

---

[1] Although it is only signed by Nauta's counsel, the motion is styled as being on behalf of all defendants. For ease of reference, in light of the various motions filed by the other defendants, this opposition will refer to this as "Nauta's" motion to dismiss. But to the extent that arguments made by Nauta could be construed to apply to all of the defendants, the Government intends for its opposition to similarly apply to all of them.

Counts 1 through 32 charge Trump alone with unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e).  Nauta is charged in eight of the remaining ten counts, relating to obstruction of the grand jury and FBI investigations into Trump's conduct.[2]  The charges against Nauta can be grouped into three areas of conduct: (1) his involvement in moving boxes containing classified documents so that Trump's attorney would not find them and return them to the grand jury; (2) his involvement in attempting to destroy security camera footage showing his surreptitious movement of the boxes; and (3) his false statements to the FBI during an interview.

First, the Superseding Indictment sets forth detailed allegations explaining Nauta's role in the surreptitious movement of boxes with classified documents that was designed to hide the records from the grand jury.  ECF No. 85 ¶¶ 51-63.  As the Superseding Indictment explains, the FBI and grand jury investigations opened on March 30 and April 26 of 2022, respectively.  ECF No. 85 ¶¶ 51-52.  An attorney for Trump (referred to as "Trump Attorney 1") accepted service of a grand jury subpoena requiring production of classified documents in Trump's possession.  ECF No. 85 ¶¶ 53, 55.  After meeting with Trump on May 23 at Mar-a-Lago, the attorney then returned to the Trump property on June 2 to review the contents of boxes in a storage room for materials

---

[2] Specifically, Nauta is named in Count 33, charging conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k); Count 34, charging withholding of a document or record or aiding and abetting the same, in violation of 18 U.S.C. §§ 1512(b)(2)(A) and 2; Count 35, charging corruptly concealing a document or record or aiding and abetting the same, in violations of 18 U.S.C. §§ 1512(c)(1) and 2; Count 36, charging concealing a document in a federal investigation or aiding and abetting the same, in violation of 18 U.S.C. §§ 1519 and 2; Count 37, charging a scheme to conceal or aiding and abetting the same, in violation of 18 U.S.C. §§ 1001(a)(1) and 2; Count 39, charging false statements, in violation of 18 U.S.C. § 1001(a)(2); Count 40, charging altering, destroying, mutilating, or concealing a record, document, and other object or aiding and abetting the same, in violation of 18 U.S.C. §§ 1512(b)(2)(B) and 2; and Count 41, charging corruptly altering, destroying, mutilating, or concealing a record, document, and other object or aiding and abetting the same, in violation of 18 U.S.C. §§ 1512(c)(1) and 2.

responsive to the grand jury subpoena. ECF No. 85 ¶¶ 55-57, 61-63. In the interim, however, and unbeknownst to the attorney, Nauta took out a total of approximately 64 boxes from the storage room: three boxes on May 24; 50 boxes on May 30; and 11 boxes on June 1. *Id.* ¶ 59. Then, hours before the attorney returned to Mar-a-Lago on June 2 to conduct his review for documents responsive to the subpoena, Nauta moved only approximately 30 boxes into the storage room, aided by De Oliveira. *Id.* ¶ 62. The attorney tasked with searching for documents responsive to the subpoena was never informed that boxes had been taken out of the storage room prior to his review, even as Nauta personally escorted the attorney to and from the storage room. *Id.* ¶¶ 63, 64, 66. The attorney ultimately found and provided to the FBI 38 documents with classification markings. *Id.* ¶¶ 65, 75. But when a search warrant was executed at the property on August 8, 2022, over 100 additional documents with classification markings were found, approximately 75 of them in the very storage room from which Nauta had removed boxes before the attorney's search. *Id.* ¶¶ 89-90.

Four of the charges against Nauta stem from this conduct:

- **Count 34** charges Nauta and Trump with engaging in misleading conduct toward Attorney 1 by moving the boxes so that Attorney 1 would not find the documents and produce them to a federal grand jury, in violation of 18 U.S.C. § 1512(b)(2)(A). In addition, the count alleges that Trump attempted to corruptly persuade Attorney 1 to hide and conceal documents from the grand jury. ECF No. 85 ¶¶ 98-99.

- **Count 35** charges that Nauta and Trump corruptly concealed a document or record from the grand jury by moving the boxes, in violation of 18 U.S.C. § 1512(c)(1). ECF No. 85 ¶¶ 100-01.

- **Count 36** charges that Nauta and Trump, by moving the boxes, concealed and covered up a document or record with the intent to obstruct the FBI investigation, in violation of 18 U.S.C. § 1519. In addition, the count alleges that Trump caused the submission of a false certification to the FBI. ECF No. 85 ¶¶ 102-03.

- **Count 37** charges that, by moving the boxes, Nauta and Trump engaged in a scheme to conceal material facts from the grand jury and the FBI, in violation of 18 U.S.C. §§ 1001(a)(1) and (2). ECF No. 85 ¶¶ 104-05.

Each of these counts incorporates detailed factual allegations, closely tracks the statutory language, and identifies exactly what crimes Nauta is charged with committing.

Next, the Superseding Indictment provides detail explaining Nauta's role in trying to destroy security camera footage showing the movement of the boxes. ECF No. 85 ¶¶ 74-87, 91. When FBI agents came to Mar-a-Lago on June 3, 2022, to collect classified documents, they noticed surveillance cameras near the storage room where the boxes were stored and where the attorney had conducted his review. *Id.* ¶ 74. On June 22, 2022, the Department of Justice indicated to an attorney for Trump that it would be seeking security camera footage from Mar-a-Lago, and sent the attorney a draft grand jury subpoena. *Id.* ¶ 75. The next day, Trump called De Oliveira and spoke with him for 24 minutes. *Id.* ¶ 76. Then, on June 24, the Department of Justice served the final grand jury subpoena for surveillance video footage on Trump's business organization, and the same day, a co-worker texted Nauta to tell him that Trump wanted to see him. *Id.* ¶¶ 77-78. Nauta then changed travel plans to go to Palm Beach, Florida, rather than travel with Trump to Illinois, and he provided inconsistent explanations to colleagues about why he had done so. *Id.* ¶¶ 78-79. And at the same time, Nauta reached out to both De Oliveira and Trump Employee 4, who was Director of Information Technology (IT) at Mar-a-Lago. *Id*. ¶¶ 79-80. In advance of Nauta's sudden trip to Mar-a-Lago, De Oliveira told another Trump employee that Nauta wanted to keep his trip secret and that he (Nauta) wanted De Oliveira to find out from Trump Employee 4 how long the security footage was stored. *Id.* ¶ 81. On the evening of Saturday, June 25, when Nauta arrived in Florida, he and De Oliveira went to a security booth where security camera footage is displayed, and then went with a flashlight to the area outside the storage room where the cameras were located. *Id.* ¶ 82.

4

On Monday morning, June 27, De Oliveira went to the IT office and asked Trump Employee 4 to step away from the office with him so they could talk. *Id.* ¶¶ 83-84. The two of them walked to a small room known as an "audio closet" and De Oliveira said that their conversation should remain between the two of them. *Id.* ¶ 84(a). After asking Trump Employee 4 how long the server retained the footage, De Oliveira told Trump Employee 4 that "the boss" wanted the server deleted. *Id.* ¶ 84(a)-(c). When Trump Employee 4 responded that he would not have the authority to do that, De Oliveira insisted that "the boss" wanted the server deleted, and asked "what are we going to do?" *Id.* ¶ 84(c). The Superseding Indictment goes on to describe how De Oliveira and Nauta met in the bushes on a neighboring property shortly after De Oliveira's solicitation of Trump Employee 4, and that De Oliveira also spoke with Trump that afternoon. *Id.* ¶¶ 85-86. Finally, in August 2022, after the execution of a search warrant at Mar-a-Lago, Nauta confirmed De Oliveira's continuing loyalty to Trump, and Trump agreed to provide De Oliveira with an attorney. *Id.* ¶ 91.

Two of the charges against Nauta stem from this conduct:

- **Count 40** charges Nauta, Trump, and De Oliveira with corruptly persuading and attempting to persuade Trump Employee 4 to alter, destroy, mutilate, and conceal the security camera footage so that it would not be provided to the grand jury, in violation of 18 U.S.C. § 1512(b)(2)(B). ECF No. 85 ¶¶ 113-14.

- **Count 41** charges Nauta, Trump, and De Oliveira with corruptly attempting to alter, destroy, mutilate, and conceal the security camera footage so that it would not be provided to the grand jury, in violation of 18 U.S.C. § 1512(c)(1). ECF No. 85 ¶¶ 115-16.

Again, each of the counts incorporates the Superseding Indictment's detailed factual recitation regarding the defendants' conduct, and faithfully tracks the statutory language.

Based upon all of the conduct described above, Count 33 of the Superseding Indictment charges Nauta, Trump, and De Oliveira with conspiracy to obstruct justice, in violation of 18

5

U.S.C. § 1512(k).  The count enumerates each of the three criminal offenses that were the objects of the conspiracy:  § 1512(b)(2)(A), §1512(b)(2)(B), and §1512(c)(1).  ECF No. 85 ¶¶ 94-95. Those listed objects are the very substantive offenses charged against Nauta in Counts 34-37 (regarding box movement) and Counts 40-41 (regarding surveillance footage deletion).  The conspiracy count (Count 33) not only incorporates all of the detailed factual allegations, ECF No. 85 ¶ 94, but also specifies the various "manner and means" through which the defendants carried out the conspiracy, including "moving boxes of documents to conceal them from Trump Attorney 1, the FBI, and the grand jury," "attempting to delete security camera footage from The Mar-a-Lago Club to conceal the footage from the FBI and grand jury,l" and "making false and misleading statements to the FBI."  ECF No. 85 ¶ 97.  Although not required, the count also describes the overall motive for the conspiracy: "The purpose of the conspiracy was for TRUMP to keep classified documents he had taken with him from the White House and to hide and conceal them from a federal grand jury."  ECF No. 85 ¶ 96.

Finally, Nauta's criminal conduct also includes lying to the FBI early in the criminal investigation.  Specifically, Count 39 charges Nauta with making false statements in a voluntary, recorded interview with the FBI on May 26, 2022, in violation of 18 U.S.C. § 1001(a)(2).  ECF No. 85 ¶¶ 109-11.  The FBI agents explained to Nauta that they were investigating how classified documents had been kept at Mar-a-Lago and asked Nauta questions about the location and movement of the boxes at Mar-a-Lago before Trump (with Nauta's assistance) provided 15 boxes to NARA on January 17, 2022.  ECF No. 85 ¶ 110.  Count 39 carefully tracks the applicable statutory language, and then then lays out in clear question-and-answer format the specific false statements that Nauta made to the agents in the interview.  ECF No. 85 ¶ 111.  In sum, although Nauta had been personally involved in moving boxes from the storage room to Trump's residence

6

and then moving those boxes to a truck for delivery to NARA after Trump's review, in his interview Nauta attempted to distance himself from the boxes, feigning ignorance about how boxes had gotten to Trump's residence and where they had been stored at the property.

**DISCUSSION**

**I.      Applicable Legal Standards Under the Federal Rules of Criminal Procedure**

A defendant may challenge the sufficiency of an indictment under Rule 12 of the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 12(b)(3)(B).  "The Sixth Amendment guarantees every defendant the right to be informed of the government's accusation against him." *United States v. Chilcote*, 724 F.2d 1498, 1504 (11th 1984) (citing *Russell v. United States*, 369 U.S. 749, 761 (1962)).  In addition, the Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."  *United States v. Chalker*, 966 F.3d 1177, 1190 (11th Cir. 2020) (quotation marks omitted); *see United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998).

In judging the sufficiency of an indictment, the Eleventh Circuit has cautioned that courts should give the charging document "a common sense construction, and its validity is to be determined by practical, not technical, considerations."  *Chalker*, 966 F.3d at 1190 (quotation marks omitted).  It is generally enough for an indictment to track statutory language, as long as the indictment sets forth all the elements necessary to constitute the offense intended to be punished, *United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020), and provides "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the

7

general description, with which he is charged," *United States v. McGarity*, 669 F.3d 1218, 1236 (2012) (quotation marks omitted).  An indictment sufficiently informs the defendant of the charge against him and enables him to plead double jeopardy in any future prosecution for the same offense "as long as the language therein sets forth the essential elements of the crime." *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985).

Rule 12 does not permit defendants to "challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012), *aff'd and remanded*, 571 U.S. 320 (2014).  Instead, in considering a motion to dismiss, the court "is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  "Because [the defendants were] properly indicted, the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).  A Rule 29 motion is "the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure." *Id.*  "There is no summary judgment procedure in criminal cases. . . . The sufficiency of a criminal indictment is determined from its face.  The indictment is sufficient if it charges in the language of the statute." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992); *see United States v. Gosney*, No. 22-CR-80022, ECF No. 493 at 4 (S.D. Fla. Jan. 28, 2023) ("Rather, assuming a facially valid indictment, the proper vehicle for raising an issue relevant to the guilt or innocence of a defendant is through a motion for judgment of acquittal or argument to the jury—not via a pretrial motion to dismiss.") (quoting *Salman*, 378 F.3d at 1268).

## II.    The Superseding Indictment Is More Than Sufficient

The thorough, clear, and detailed Superseding Indictment is more than sufficient to satisfy the applicable standards at this stage of the proceedings.  Each count incorporates detailed factual allegations, carefully tracks the statutory language, and puts Nauta on notice of the charges against him.  Nauta has ample information at his disposal to understand what he needs to defend against and to plead double jeopardy in any future prosecution for the same offenses.  *See Cole*, 755 F.2d at 759.  Nothing more is required, and the Court need look no further to deny his motion.

Nauta's challenges to the charges get the law entirely wrong.  To begin, he miscasts the legal standard for pretrial dismissal of criminal counts, repeatedly doing exactly what the law precludes defendants from doing at this stage, which is to challenge the sufficiency of the evidence as opposed to addressing the face of the indictment.  *See Kaley*, 667 F.3d at 1316.  Nauta complains, for example, about "false" allegations, ECF No. 352 at 5; factual allegations that are not "sufficient to support" a charge, *id.* at 13; and a "misguided allegation" that is "erroneous," *id.* at 14.  Nauta makes a slew of evidentiary objections as if he were already at trial, criticizing the Superseding Indictment for being "prejudicial" and "argumentative," *id.* at 2, including "irrelevant discussion" and "hearsay," *id.* at 5, and undercutting the "jury's independent responsibility to weigh evidence," *id.* at 6.  These are not challenges to the "face of the indictment and, more specifically, the language used to charge the crimes." *Sharpe*, 438 F.3d at 1263.  Nauta has been properly indicted, so he must save his sufficiency-of-the-evidence claims for a "a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Salman*, 378 F.3d at 1268.

Nauta also confuses civil and criminal pleading requirements.  He criticizes the Superseding Indictment for its "shotgun" pleading style.  ECF 352 at 2-4.  While civil complaints may be dismissed on this ground, *see Frank v. Schulson*, 782 F. App'x 917, 919 (11th Cir. 2019) (identifying "four types of shotgun pleadings" in civil cases), the concept does not apply to

9

indictments.  Nauta cites only civil cases (*see* ECF No. 352 at 3), and Rule 7 expressly states that a "count may incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1); *see also United States v. Lang*, 732 F.3d 1246, 1249 (11th Cir. 2013) ("Allegations in one count of an indictment are not automatically incorporated into another; express incorporation is required.") (citing *United States v. Schmitz*, 634 F.3d 1247, 1262 (11th Cir. 2011)).

The cases Nauta cites to suggest that the Superseding Indictment fails to comply with Rule 7 are either beside the point or do not support his arguments.  *United States v. Sharpe* was a complex wire fraud case in which the Eleventh Circuit reversed a district court's dismissal of the indictment under Rule 12 for doing precisely what Nauta attempts to do here: "After review of the record, it is clear that in dismissing the instant indictment the district court considered the overall sufficiency of the evidence presented by the government at trial."  438 F.3d at 1263.  Other cases Nauta cites had nothing to do with sufficiency of an indictment.  *See United States v. Gatlin*, 90 F.4th 1050, 1066 (11th Cir. 2024) (review of the sufficiency of the trial evidence); *United States v. Kelly*, 888 F.2d 732, 740-41 (11th Cir. 1989) (same); *United States v. Pendas-Martinez,* 845 F.2d 938, 941-42 (11th Cir. 1988) (review of evidentiary rulings at trial).  And while *United States v. Bobo,* 344 F.3d 1076 (11th Cir. 2003), did in fact involve the dismissal of an indictment, the indictment in that case did not adequately explain the alleged scheme to defraud a health-care benefits program, such that there was no way to tell what scheme the defendant was alleged to have carried out.  *Id.* at 1085-86.  There is no remotely similar issue in this case, where the Superseding Indictment explains what Nauta did and how it amounted to a criminal offense.

## III.    The Superseding Indictment Is Not Duplicitous

Nauta alleges that several counts in the Superseding Indictment are improperly duplicitous. His arguments focus on the conspiracy charged in Count 33, *see* ECF No. 352 at 7-10, but also include suggestions of duplicity in Counts 34, 36, and 37, *see id.* at 9, 12, and 13.  Relying almost

exclusively on out-of-circuit case law,[3] Nauta misapprehends the nature of duplicity in charging documents generally and misreads the Superseding Indictment specifically. As described above, each count clearly describes the specific conduct for which Nauta is charged, and none of the counts is duplicitous. Importantly, Nauta also fails to acknowledge or inform the Court that, under well-established law, even if there were any potential duplicity, it would be properly addressed through jury instructions rather than dismissal.

### A.       Legal Standards

"'A count is duplicitous if it charges two or more separate and distinct offenses.'" *United States v. Saintvil*, No. 22-10004, 2023 WL 3644976, at *4 (11th Cir. May 25, 2023) (quoting *United States v. Deason*, 965 F.3d 1252, 1267 (11th Cir. 2020)). In other words, as the Eleventh Circuit has explained, "each count of an indictment may only charge a single offense." *Id.* But "where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count." *United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) (internal quotation marks and citation omitted); *see also United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) ("Where a penal statute . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment . . . the indictment

---

[3] Pages 7-9 of Nauta's motion rely almost entirely on Second Circuit caselaw and appear to be copied from a Memorandum of Law filed by the defendants in a 2006 tax fraud prosecution in the Southern District of New York. *Compare* ECF No. 352 at 7-9 *with United States v. Stein, et al.*, No. 1:05-cr-00888-LAK, ECF No. 247 at 5-6 and 8-9 (S.D.N.Y. Jan. 19, 2006). That may explain why Nauta's motion raises issues that have no place in this case. For example, like the New York case, he cites *Grunewald v. United States*, 353 U.S. 391, 404 (1957), which holds that a conspiracy may not be extended by including acts of obstruction that occur after the main objectives of the conspiracy have been achieved. But *Grunewald* is entirely irrelevant in this case, where the Superseding Indictment charges a single conspiracy to obstruct justice between May and August of 2022. The duplicity motion filed by the defendants in the *Stein* case provides more explanation than Nauta's motion of how those defendants alleged that the counts in question were duplicitous, but the motion was nonetheless denied. *See United States v. Stein*, 429 F. Supp. 2d 633, 636-37 (S.D.N.Y. 2006).

may charge any or all of the acts conjunctively, in a single count[.]"); *id.* at 1574 ("An indictment is not duplicitous if, in one count, it charges a defendant with violating the statute in both ways.").

There is no duplicity, moreover, when a charged conspiracy, like the one charged in Count 33, has multiple objectives: "[I]t has long been the law that a conspiracy may have two objectives" without being duplicitous. *United States v. Mathis,* 239 F. App'x 513, 516 (11th Cir. 2007). "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *Braverman v. United States,* 317 U.S. 49, 54 (1942) (internal quotations omitted). "Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes." *Id.*; *see also* Eleventh Cir. Pattern Jur. Instr. O13.2 (unanimity instruction where multiple crimes are alleged as objects of conspiracy). The rules also explicitly permit multiple defendants to be charged in a single count without impermissible duplicity. *See* Fed. R. Crim. P. 8(b) ("The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.").

Even if a charge is duplicitous, the appropriate remedy is not dismissal. *See Reno v. United States*, 317 F.2d 499, 502 (5th Cir. 1963) ("Duplicity is not a fatal defect."); 1A Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. § 146 (5th ed. 2020) ("An indictment or information charging two separate offenses in a single count is duplicitous, but this flaw does not require dismissal of the indictment.").[4]  And "generally, any confusion or risk of non-unanimity can be

---

[4] Contrary to Nauta's citation of Rule 12(b)(3)(B)(i), which he asserts is a rule of "*dismissal* for improper charge joinder," ECF No. 352 at 7 (emphasis added), the rules say nothing about

12

appropriately addressed and eliminated by special interrogatories and careful jury instructions." *United States v. Abdi*, No. 1:13-CR-00484-JEC, 2014 WL 3828165, at *6 (N.D. Ga. Aug. 4, 2014) (citing *United States v. Davis,* 306 F.3d 398, 416 (6th Cir. 2002); *United States v. Marshall,* 75 F.3d 1097, 1111–12 (7th Cir. 1996); *United States v. Pungitore,* 910 F.2d 1084, 1136 (3d Cir. 1990)).

### B.      Count 33 Is Not Duplicitous

Count 33 charges a single, carefully defined and bounded conspiracy with three conspirators.  It is not duplicitous because it does not allege multiple crimes:  it alleges one crime, that of conspiracy to obstruct justice, with three substantive criminal objects.  *See* ECF No. 85 ¶ 95.  It also sets forth the manner and means of the conspiracy, describing a series of acts between May and August 2022, all part of the same single unlawful agreement.  *See id.* ¶ 97.  This is sufficient, and not duplicitous.  "'[I]t has long been the law that a conspiracy may have two objectives' without being duplicitous," *United States v. Lynch*, No. 08-10078-CR, 2009 WL 10674928, at *1 (S.D. Fla. Aug. 27, 2009) (quoting *Mathis*, 239 F. App'x at 516), and the "'allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects,'" *id.* (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)) (alterations in original).

The cases cited by Nauta are not to the contrary.  *Kotteakos* merely stands for the proposition that under the "wheel" metaphor for a conspiracy, there must be some relationship between the "spokes" other than their separate relationships with the center of the wheel. *Kotteakos v. United States*, 328 U.S. 750, 755 (1946).  And in that case, the alleged conspiracy

---

dismissal for a duplicitous charge, instead only making clear that a motion alleging duplicity must be made in a pretrial motion.

had involved dozens of conspirators, many of whom had no connection or relationship to one another, apart from the fact that they *separately* transacted with one common defendant. *Id.* at 753-54. Here, by contrast, the three defendants are alleged to have worked together to achieve the objects of the single conspiracy. That is sufficient as a matter of pleading. At trial, the defendants can seek a multiple-conspiracies instruction if they think it necessary, and can argue after conviction that they think a material variance has occurred. *See United States v. Phalo*, 283 F. App'x 757, 762 (11th Cir. 2008). But because a single conspiracy is alleged, the government is "entitled to present its evidence at trial." *Salman*, 378 F.3d at 1268.

Nauta's reliance on *United States v. Geibel*, 369 F.3d 682 (2d Cir. 2004), *United States v. Johansen*, 56 F.3d 347 (2d Cir. 1995), and *United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979), fares no better. In *Geibel*, the Second Circuit reviewed the sufficiency of the evidence post-trial and concluded that the trial evidence did not establish the single conspiracy alleged in the indictment, resulting in variance. *See* 369 F.3d at 692-93. The court did not rule that the indictment was facially invalid, and indeed affirmed the convictions because of the defendants' failure to establish "substantial prejudice." *Id. Johansen*, similarly, raised another post-trial variance question. *See* 56 F.3d at 350. Again there, the court did not hold that the indictment was facially invalid or that it should have been dismissed pre-trial. The same was true in *Cambindo Valencia*. *See* 609 F.2d at 625.

In this circuit, too, whether a single conspiracy or multiple conspiracies exist is a question for the jury. "[T]he jury makes the initial determination of whether the evidence supports a single conspiracy and their determination will not be disturbed if supported by substantial evidence." *United States v. Edouard*, 485 F.3d 1324, 1347 (citing *United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997)); *see also United States v. Richardson*, 532 F.3d 1279, 1285 (11th Cir. 2008).

14

Because Count 33 of the Superseding Indictment charges a single conspiracy, it survives a motion to dismiss alleging duplicity. *See United States v. Northcutt*, No. 07-60220-CR, 2008 WL 162753, at *6 (S.D. Fla. Jan. 16, 2008).

Relatedly, Nauta's arguments appear to confuse a conspiracy's criminal objects with what the Superseding Indictment alleges is its purpose. *See* ECF No. 352 at 10 (conflating "purpose" of conspiracy and "object"). ECF No. 85 ¶¶ 94-95. At trial, the Government will be required to prove that (1) two or more persons agreed to try to accomplish a shared unlawful plan; and (2) each defendant knew of the plan's unlawful purpose and willfully joined in it. *See* Eleventh Cir. Pattern Jur. Instr. O13.1;[5] *see also United States v. Martin*, 803 F.3d 581, 588 (11th Cir. 2015) (in prosecution for bank and wire fraud under 18 U.S.C. § 1349, government had to prove that "(1) two or more persons agreed to a common and unlawful plan to commit bank and wire fraud as alleged in the indictment; (2) [the defendant] knew of the unlawful plan; and (3) [the defendant] knowingly and voluntarily joined the plan").

---

[5] Although Instruction O13.1 contains an "overt act" requirement, under the plain text of Section 1512(k), proof of an overt act is not required. Unlike 18 U.S.C. § 371, which specifically requires a conspirator to "do [some] act to effect the object of the conspiracy," Section 1512(k) contains no such requirement. *See, e.g., United States v. Shabani*, 513 U.S. 10, 14 (1994) (in discussing a conspiracy charge under 21 U.S.C. § 846, which likewise has no overt act requirement, the Supreme Court stated: "[W]e find it instructive that the general conspiracy statute, 18 U.S.C. § 371, contains an explicit requirement that a conspirator 'do any act to effect the object of the conspiracy.' In light of this additional element in the general conspiracy statute, Congress' silence in § 846 speaks volumes."); *United States v. Edlind*, 887 F.3d 166, 176 n.4 (4th Cir. 2018) (Section 1512(k) "does not contain an overt act requirement"); *United States v. Nelms*, 653 F. App'x. 524, 527 (9th Cir. 2016) ("Section 1512(k) does not require an overt act."). And even the Fifth Circuit, which previously held that Section 1512(k) requires an overt act despite its plain text, has now "recognize[d] that our previous interpretations of § 1512(k) may be at odds with the Supreme Court's conclusions that a number of similarly-worded statutes do not contain an overt-act requirement." *United States v. Said*, No. 21-10588, 2023 WL 167213, at 3 n.17 (5th Cir. 2023).

The "unlawful plan" of a conspiracy, in turn, is the plan to accomplish the conspiracy's underlying illegal *objects*. As the Supreme Court has explained, a "fundamental characteristic" of all conspiracies is that there must be a "joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio v. United States*, 578 U.S. 282, 287-88 (2016) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (alterations in original). That underlying offense is the object of the conspiracy, because conspirators must "'pursue the same criminal objective'" even though they do not have to "'agree to commit or facilitate each and every part of the substantive offense.'" *Id.* (quoting *Salinas*, 522 U.S. at 63). The Eleventh Circuit pattern instructions similarly demonstrate that a conspiracy's objects—which the Government must prove—are the underlying substantive crimes charged. *See, e.g.,* Eleventh Cir. Jur. Instr. O13.2 (conspiracy has "multiple objects" where defendants are charged in a single count with committing multiple "separate substantive crimes"). As described above, Count 33 of the Superseding Indictment alleges that the three defendants participated in an obstruction conspiracy that included as objects the violation of three criminal statutes: § 1512(b)(2)(A), §1512(b)(2)(B), and §1512(c)(1).

In addition to specifying the criminal objects of the conspiracy, the Superseding Indictment also includes a description of the overall purpose of the conspiracy, which captures Trump's motive to conceal the classified documents from the grand jury. Although the term "purpose" is sometimes used interchangeably with "object," here it describes the motive, and it is not a required element of the Government's proof. The Third Circuit, for instance, has cautioned against "conflat[ing] motive with *mens rea* intent and conduct," *United States v. Baroni*, 909 F.3d 550, 583-84 (3d Cir. 2018), *rev'd on other grounds by Kelly v. United States*, 140 S.Ct. 1565 (2020), explaining that motive is not a required element of proof:

16

> [T]here's a difference between "intent" and "motive." "[A] defendant acts intentionally when he desires a particular result, without reference to the reason for such desire. Motive, on the other hand, is the reason why the defendant desires the result." 2 Harry Sanger Richards et al., *American Law and Procedure* § 8, at 6 (1922). In other words, "intent" asks whether a person acts "intentionally or accidentally," while "motive" asks, "If he did it intentionally, *why* did he do it?" 1 John William Salmond, *Jurisprudence* § 134, at 398 (7th ed.1924) (emphasis in original); *see also Black's Law Dictionary* 881 (Bryan Garner ed., 10th ed. 2014) ("While motive is the inducement to do some act, intent is the mental resolution or determination to do it."). This fundamental "distinction between motive and intent runs all through the law." *Johnson v. Phelan,* 69 F.3d 144, 155 (7th Cir.1995) (Posner, C.J., concurring in part and dissenting in part).

*Hassan v. City of New York*, 804 F.3d 277, 297 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (quoted by *Baroni*, 909 F.3d at 583-84).

Applying those principles in a case where the defendants were alleged to have engaged in a conspiracy motivated by their desire to exact political punishment on a town's mayor, that court explained that "[t]he intent to punish Mayor Sokolich may explain Defendants' motive—*why* Defendants intended to defraud the Port Authority in this case—but it is distinct from *mens rea* and is not a required element of any of the charged offenses." *Baroni*, 909 F.3d at 584; *see also Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 472 (5th Cir. 1968) ("Intent, in its legal sense, is quite distinct from motive. It is defined as the purpose to use a particular means to effect a certain result. Motive is the reason which leads the mind to desire that result.") (quotation marks omitted).

Although the Superseding Indictment includes an allegation about the motive or purpose for the conspiracy, that is not an element of the offenses charged, and Eleventh Circuit law is clear that where an indictment alleges more than what is required, the requirements of the government's proof are not changed. *See, e.g., United States v. Nunez*, 1 F.4th 976, 989 (11th Cir. 2021) (while indictment alleged a conspiracy to distribute 182 kilograms of cocaine, "the government ordinarily must prove only that the defendants knew they were transporting a controlled substance, not that

17

they knew the controlled substance was cocaine."); *United States v. Couran*, 180 F. App'x 867, 871 (11th Cir. 2006) ("To the extent Couran is arguing that his conspiracy conviction was not supported by sufficient evidence because the government failed to prove all of the facts charged in his Superseding Indictment . . . the government need not prove all facts charged in the indictment as long as it proves . . . the essential elements of the crime.") (internal citation and quotation marks omitted). And even if the defendants may have had differing motives, it has no impact on the charges or the elements of the offense because the Government does not have to prove that a defendant "had knowledge of all details of the phases of the conspiracy," but only that a defendant "knew the essential nature of the conspiracy." *United States v. Lluesma*, 45 F.3d 408, 410 (11th Cir. 1995).

### C.      The Obstruction of Justice and Concealment Counts Are Not Duplicitous

Likewise, none of the substantive obstruction of justice or concealment counts are duplicitous. As described in detail above, each count charges a single crime, laying out the conduct with which Nauta is charged and the statute that he is charged with violating. There is no duplicity. Nauta appears to find fault with the fact that he and Trump are both charged in Count 34, *see* ECF No. 352 at 9 (referring to "defendants A & B"), but charging multiple defendants in a single count is explicitly permitted by Rule 8(b). He also argues that Count 34 alleges "one . . . crime as to defendant A" and "another alleged crime by defendants A & B." ECF No. 352 at 9. This simply misunderstands the plain text of the Superseding Indictment. Count 34 alleges a single crime in violation of 18 U.S.C. § 1512(b)(2)(A), and provides a description of some of the "essential facts," Fed. R. Crim. P. 7(c)(1), constituting the offense. Specifically, Count 34 alleges that Nauta committed the offense by moving boxes containing responsive documents so that Trump Attorney 1 would not find them. Trump committed the offense charged in Count 34 by causing Nauta to

18

move boxes containing responsive documents so that Trump Attorney 1 would not find them, and by attempting to persuade Trump Attorney 1 to conceal documents from a federal jury and by misleading Trump Attorney 1. Count 34 therefore alleges a single offense by Trump and a single offense by Nauta. This is entirely permissible. *See United States v. Dalton*, 465 F.2d 32, 34 (5th Cir. 1972) (no duplicity where count in an indictment against one defendant is also charged in the same count against other defendants, even without an allegation of a common scheme, design, or action in concert).

## IV. Count 39 Properly Alleges False Statements

Nauta also challenges the sufficiency of Count 39, which charges Nauta with making false statements to the FBI in violation of 18 U.S.C. § 1001(a)(2).[6] *See* ECF No. 352 at 16-18. The precise contours of Nauta's arguments regarding this count are murky and varied: he claims that the questions were imprecise and prevented Nauta from being "pinn[ed] down," *id.* at 16; he claims that Nauta's answers were "literal[ly] tru[e]," *id.* at 17; he faults the use of punctuation in the transcribed version of the false statements alleged in the Superseding Indictment, *id.* at 16-17, without proposing what he thinks would have been a more accurate interpretation; he insists that the FBI should have been interested in different questions, *id.* at 16; and he references grand jury testimony that is not the subject of Count 39, *id.* at 17-18. At bottom, Nauta's only legal challenge appears to be that the questions in his FBI interview that gave rise to the alleged false statements were ambiguous. *See id.* at 16 (questions suffered a "lack of specificity" and were not "sufficiently precise"); *id.* at 17 ("vague and ambiguous questions" did not have "sufficient clarity"); *id.* at 18

---

[6] Nauta's motion also purports to challenge the sufficiency of Count 42, in which he is not charged. *See* ECF No. 352 at 18. Because De Oliveira, who *is* charged in Count 42, has separately moved to dismiss that count, *see* ECF No. 323, the Government respectfully refers the Court to the arguments that the Government has made in opposition to that motion.

("ambiguous half-questions" and "ambiguous questioning").  His claim does not provide any basis to dismiss this properly and clearly charged false statement count.

In order to challenge a false statement charge at the Rule 12 stage, a question must be "so fundamentally ambiguous as to preclude a conviction as a matter of law." *United States v. Manapat*, 928 F.2d 1097, 1100 (11th Cir. 1991) (reaffirmed by *United States v. Burnette*, 65 F.4th 591, 610 (11th Cir. 2023)).  A question is "ambiguous as a matter of law when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answered unless it were defined at the time it were sought and offered as testimony.'" *Id.* (quoting *United States v. Lattimore*, 127 F. Supp. 405, 410 (D.D.C. 1995)).  But the fact that there is "some ambiguity" in a falsely answered question "will not shield the respondent from a perjury or false statements prosecution." *United States v. Malago*, No. 12-20031-CR, 2012 WL 4378102, at *2 (S.D. Fla. Sep. 25, 2012) (quoting *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987)).  Where a question or statement is "arguably ambiguous," the defendant's understanding of the question is "'a matter for the jury to decide.'" *Burnette*, 65 F.4th at 610 (quoting *United States v. Swindall*, 971 F.2d 1531, 1553 (11th Cir. 1992)).  According to the Eleventh Circuit, even a "twisted, asyntactical garble" can be merely arguably ambiguous—as opposed to fundamentally ambiguous—so long as a jury could reasonably find that there could be a "mutual understanding" between the questioner and the person answering the question. *Id.* at 610-11.  And the fact that a question is susceptible of multiple interpretations, even if "imperfectly framed and executed," does not render it fundamentally ambiguous.  *See id.* at 611 ("At worst, though, this question asked one of two things . . . .").

Neither the questions that Nauta was asked in his voluntary interview nor his answers were ambiguous in any way.  In plain English, the agents asked Nauta: "Does any—are you aware of

20

any boxes being brought to [Trump's] home—his suite?"  Nauta answered, "no."  ECF No. 85 ¶ 111.  Nauta made no complaint that he did not understand the question, and his answer was a flat and unambiguous, "no."   Next, the agent confirmed the answer while offering Nauta an opportunity to clarify, asking, "so to the best of your knowledge, you're saying that those boxes that you brought onto the truck, first time you ever laid eyes on them was just the day of when [Trump Employee 2] needed you to . . . to take them?"  And before the question was even finished, Nauta answered directly: "Correct."  *Id.*  And when asked whether he had "any idea" how "the 15 boxes" got to the Pine Hall area at Mar-a-Lago, again Nauta answered, "no."  *Id.*

These are clear questions with direct answers that do not betray a hint of confusion or lack of clarity on Nauta's part.  There is no indication that the agent and Nauta lacked a "mutual understanding" about the questions' meaning, and they are a far cry from the "twisted, asyntactical garble" that the Eleventh Circuit held still survives a fundamental ambiguity challenge.  *Burnette*, 65 F.4th at 610-11 (citing *Swindall*, 971 F.2d at 1553).  Nauta may believe that he has good explanations for his answers—as he suggests in his motion, claiming that he later clarified his meaning, *see* ECF No. 352 at 17—and he may believe that his answers were "literally true," *id.*  But those are jury questions.  They do not require dismissal here.  Because Count 39 tracks the language of the statute and provides a recitation of the statements alleged to have been false, it is sufficiently pleaded.  *See Kaley*, 677 F.3d at 1326.

## V.      Surplusage

In the final substantive paragraph of his motion, Nauta asks the Court to strike what he refers to as "abundant surplusage" that he contends is throughout "paragraphs 1 through 91" of the Superseding Indictment.  ECF No. 352 at 18-19.  He does not identify a particular allegation that should be stricken, and he offers no support for this request.  That is because there is none.  A motion to strike surplusage from an indictment should not be granted "unless it is clear that the

allegations are not relevant to the charge and are inflammatory and prejudicial . . . . [T]his is a most 'exacting standard.'" *United States v. Huppert,* 917 F.2d 507, 511 (11th Cir. 1990) (quoting 1 Charles A. Wright, Federal Practice and Procedure § 127 at 424-29 (1982)).  And, as another court in this District has explained, a court "should only order words stricken from the indictment as surplusage where it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.  Additionally, even when prejudice can be shown, the Court should not strike the information contained in the indictment if it is relevant to the charged offense." *United States v. Williams*, No. 07-80179-CR, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008) (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971), and *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).  Nauta has not even attempted to meet the "exacting" standard necessary to strike surplusage, and he cannot do so because each allegation in the Superseding Indictment is relevant to the charges, and none of them is inflammatory.  The request should be denied.

## CONCLUSION

For the foregoing reasons, Nauta's motion should be denied in its entirety, and no hearing is required to address the issues he raises.

22

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:     */s/ Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946
        950 Pennsylvania Avenue, N.W.
        Washington, D.C.  20530

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

        Brett C. Reynolds
        Assistant Special Counsel
        Special Bar ID #A5503067

23

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

*/s/ Jay I. Bratt*
Jay I. Bratt